# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAI MEDRANO,<br><br>    Plaintiff,<br><br>v.<br><br>GREAT MERCANTILE AGENCY, INC.,<br><br>    Defendant. | Case No.: 1:17-cv-01392 LJO JLT<br><br>FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 8) |

The plaintiff seeks default judgment. (Doc. 8) The defendant has not opposed this motion. Nevertheless, for the following reasons, the Court recommends the motion for default judgment be **DENIED**.

## I.     Background

In this action, the plaintiff alleges she owes a debt on a medical account. (Doc. 1 at 8) She asserts that the defendant sent her a letter in which it claimed that it could refuse partial payments despite that the defendant had no authority to do so. Id. at 9. She asserts that by making this statement, the defendant was threatening legal action it could not lawfully take. Id.

Soon thereafter, the plaintiff entered into a repayment plan in which she agreed to make payments on the debt. (Doc. 1 at 9) She alleges that this agreement required the plaintiff to pay a finance charge in addition. Id. at 10. Despite this, the defendant failed to provide a Truth in Lending disclosure. Id. Upon these facts, the plaintiff claims violations of 15 U.S.C. § 1692e(5), (10), 15 U.S.C.

1

§ 1692f, 15 U.S.C. § 1638(a) and Cal. Civil Code § 1788.17.

**II.    Legal Standards Governing Entry of Default Judgment**

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. Pope v. United States, 323 U.S. 1, 22 (1944); see also Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

**III.    Discussion and Analysis**

Applying the factors articulated by the Ninth Circuit in Eitel, the Court finds the factors weigh against granting Plaintiff's motion for default judgment.

**A.    Prejudice to Plaintiff**

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. See Pepsico, Inc., 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. Id.; Moroccanoil, Inc. v.

Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds the plaintiff would be prejudiced if default judgment is not granted.

### B. Merits of the plaintiff's claims and the sufficiency of the complaint

Given the relationship between these factors, the Court considers the merits of the plaintiff's substantive claims and the sufficiency of the complaint together. See Premier Pool Mgmt. Corp. v. Lusk, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has indicated that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." Pepsico, Inc., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir.2007).

#### 1. Threat to take legal action

To determine whether a debt collector violated 15 U.S.C. § 1692e(5) or (10), the court must apply a two-pronged test evaluating (1) whether, from the perspective of the least sophisticated debtor, the debt collector threatened legal action or arrest; and (2) whether the debt collector could legally take such action and had the intent to do so. Newman v. Checkrite Cal., Inc., 912 F.Supp. 1354, 1379 (E.D.Cal.1995), superceded on other grounds.

The plaintiff contends that because the defendant "reserve[d] the right to refuse partial payments" without prior approval, this constitutes a threat of legal action and violates the Fair Debt Collection Act. Notably, courts have determined that the refusal to accept partial payments does not violate these sections. Goodin v. Bank of Am., N.A., 114 F. Supp. 3d 1197, 1205 (M.D. Fla. 2015).

In Beeks v. ALS Lien Servs., 2014 WL 7785745, at *14 (C.D. Cal. Feb. 18, 2014), the Court held that a debt collector is entitled to refuse partial payments and that doing so does not violate the Fair Debt Collection Practices Act. The Beeks court quoted the Federal Trade Commission's 2011 annual report which reads, "some conduct about which consumers complain does not violate the FDCPA. For example, a consumer may complain that a debt collector will not accept partial payments on the same installment terms that the original lender permitted when the account was current. Although a collector's demand for accelerated payment or larger installments may be frustrating to the consumer, such a demand generally does not violate the FDCPA." Beeks at 14. Thus, Beeks

concluded, "In short, defendant's refusal to accept partial payments does not violate the FDCPA." Id.

The Court agrees with the rationale of Beeks. Moreover, here, the letter sent by the defendant merely indicates that prior approval is required before it is obligated to accept a partial payment. (Doc. 1-1 at 2). It does not suggest that the partial payments would not be accepted and does not indicate that the failure to make a payment would result in any consequences. Rather, it indicates it will accept repayment of the debt and describes how the repayment can be made.

Given this and because the Court found plaintiff's motion for default judgment was insufficient, the Court ordered supplemental briefing. (Doc. 11) The Court explicitly required the plaintiff to provide, "Specific, on point legal authority that a debt collector's report to a debtor that it reserves the right to refuse partial payments constitutes a threat to take action that cannot be taken legally . . ." Though the plaintiff provided the additional brief, she ignored the legal authority cited here and argued only that the actual refusal to accept partial payments *should* be unlawful. (Doc. 12 at 2-5) The Court takes this to be the plaintiff's concession that there is no specific, on-point legal authority to support that a debt's collector's indication that it reserves the right to refuse partial payments constitutes an unlawful threat to take legal action.[1]

For these reasons, the Court determines that the plaintiff has not stated a claim under her first or second claims for violations of 15 U.S.C. § 1692e(5) or (10). Because the third claim raising a violation of 15 U.S.C. § 1692f relies upon the same facts, the Court finds also that this claim does not state a claim.

**2.    TILA violation**

Plaintiff alleges that the defendant violated 15 U.S.C. § 1638(a) when it offered a re-payment plan that allowed the plaintiff to pay $150 a month until the full amount was paid. (Doc. 1 at 9-10) The plaintiff explicitly alleges that the repayment plan included a "finance charge" which converted it to a consumer debt subject to the Truth in Lending Act. She alleges the amount of the finance charge is

---

[1] The Court agrees with the plaintiff's supplemental brief that the refusal to accept partial payments could cause a debtor to become unable to repay a debt. However, the Court disagrees that any payment, no matter how small, should require the debt collector to accept it. For example, the Court is hard-pressed to believe that Congress intended that a debt collector—upon pain of civil liability—to accept one penny per month without first being entitled to make a determination that this is a reasonable payment. Forcing a debt collector to do so would mean, in essence, that a debtor would have no reason—other than a moral imperative--to pay the debt.

"approximately $91.98." Id. at 10. Now, the plaintiff admits that she has no information whether the defendant imposed a finance charge.[2] (Doc. 12 at 7)

Notably, in support of her factual allegation that the defendant imposed a finance charge, her complaint cited to the Exhibits attached to her complaint. The Court examined these documents at length and found no evidence of this. Rather, the first exhibit demonstrates that as of March 6, 2017 she owed $1,753.44 plus $346.36 in interest for a total of $2,099.80. The second demonstrates that as of April 4, 2017, she owed $1,753.44 plus $361.25 for a total of $2,114.69. Comparing the two, the amount she owed increased $14.89. The Court is at a loss to determine how Exhibit A compared with Exhibit B demonstrates a *finance charg*e of over $90. Rather, it appears that the increase was due to the interest being charged at the original rate imposed by the creditor. Indeed, this exhibit expressly reminds the plaintiff that *interest* was assessed on the debt and that the sum of *interest* continued to increase. (Doc. 1-1) Likewise, Exhibit B shows, next to the line reading "Interest," that the amount had grown by $14.86. (Doc. 1-2) Notably, this document reflects the increase in interest *before* the plaintiff made any payment according to the repayment plan permitted by the defendant. Thus, there can be no claim that the interest is a finance charge or was being assessed as a result of the repayment plan. The Court finds the plaintiffs claim to the contrary (Doc. 12 at 7-8) to be entirely specious.

Though the plaintiff is correct that, ordinarily, on a motion for default judgment the Court would accept as true all factual allegations made in the complaint, it is not required to do so when documents attached to the complaint contradict the factual allegations. According to Federal Rule of Civil Procedure 10(c), an exhibit attached to the pleading "is part of the pleading for all purposes." (*Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir. 1987)). When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings. *See, e.g., Crenshaw v. Lister*, 556 F.3d 1283,1291 (11th Cir. 2009) (holding that "'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern;'" quoting *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir.2007)); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (holding that the contents of exhibit attached to pleading

---

[2] In doing so, she fails to explain how her complaint complies with Fed. R. Civ. P. 11.

5

trumps inconsistent allegations in that pleading); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *KKE Architects, Inc. v. Diamond Ridge Dev. LLC*, 2008 U.S. Dist. LEXIS 17127, 2008 WL 637602, *3 (C.D. Cal., Mar. 3, 2008) (citing Thompson). Not only do the exhibits contradict the plaintiff's factual allegations in this case, she *admits* that she never had information that, in fact, the defendant assessed a finance charge. (Doc. 12 at 7)

In addition, according to 15 U.S.C. § 1602(g), a "'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." [Emphasis added.] Thus, even if the Court could accept that there was a finance charge of about $90 imposed as a result of the repayment plan, the Court cannot find that the defendant was a "creditor." It is apparent, the debt was not "initially payable" to the defendant; instead, it was owed to Delano Ambulance. The repayment plan, in essence, simply allowed the plaintiff to make partial payments on the debt until it was fully paid.[3]

The Court is not alone in its interpretation that the defendant is not a "creditor" but is, instead, a debt collector. In *Robb v. Capital Acquisitions & Mgmt. Co*. 2002 WL 31654941, at *4 (N.D. Ill. Nov. 21, 2002), aff'd sub nom, the court held, "[B]ecause defendants purchased delinquent accounts, i.e., debt on which defendants charged interest, and extended no credit privileges of their own, defendants are "debt collectors" subject to the FDCPA, not "creditors" subject to TILA."]; *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118 (7th Cir. 2003).

Notably, the plaintiff argues first that *because she alleged the defendant is a creditor*, the Court is bound by this assertion, despite, apparently, her obligations under Fed. R. Civ. P. 11. Notably, however, the statement in the complaint that "Defendant is a 'creditor' as defined by 15 U.S.C. § 1602(g)," is a legal conclusion, not a factual allegation. Moreover, the allegation that the debt at issue here was initially payable to the defendant (Doc. 1 at 7), once again, is contradicted by the exhibits

---

[3] The irony is not lost on the Court that is exactly what the plaintiff claims in her causes of action alleging violation of lawful collection practice, the defendant was supposed to do.

6

attached to the complaint.  It appears from Exhibit A, the "personal medical account" Plaintiff admits she owed was initially owed to Delano Ambulance and not to the defendant. (Doc. 1-1)  In fact, Exhibit A specifically indicates that the sum is owed to "the above named creditor," which is Delano Ambulance.  In addition, the allegation that the debt was owed originally to the defendant is also contradicted by the plaintiff's other allegations which admits the amounts the defendant seeks to collect are owed to "another" and that, "Plaintiff is . . . obligated to pay a debt asserted to be owed . . . a creditor *other* than Defendant**.**" (Doc. 1 at 8, emphasis added)

On the other hand, there are no factual allegations supporting that the debt owed to Delano Ambulance constituted "credit."  There is no indication that Delano Ambulance did not intend that the amount owed was due at the time the plaintiff used its services. Thus, there is no showing that the plaintiff was extended "credit" by Delano Ambulance.  The fact she failed to pay, does not convert the amount owed to "credit."  The fact that the defendant agreed to permit partial payments on this debt on behalf of Delano Ambulance likewise, does not mean that it extended "credit" to plaintiff.  William D. Warren & Thomas R. Larmore, <u>Truth in Lending: Problems of Coverage</u>, 24 Stan. L. Rev. 793, 796 (1972) ["Credit is extended in a sale transaction when the buyer incurs debt (typically the buyer becomes liable for the price when he accepts goods) and the parties agree to a repayment schedule which allows for the deferred payment of the debt."]  Congress' purpose in enacting the TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." (15 U.S.C. § 1601(a); 12 C.F.R. § 226.1(b) (2006).)  When confronted with the overdue bill, the plaintiff was not in a position to "shop around" for credit or to decide whether she would obtain credit; rather, she *already* owed the debt.  Thus, the repayment plan is not credit and no TILA disclosures were required. Consequently, the Court finds the plaintiff has not stated a claim under the TILA.

**C.     Possibility of dispute concerning material facts**

There is significant possibility of dispute concerning material facts despite that the Clerk has entered default.  As indicated above, it seems quite clear that many of the allegations in the complaint are untrue and that the plaintiff lacked a reasonable basis to believe they were true at the time she made

them. Indeed, the plaintiff and her lawyer do not now claim the allegations are true; rather, they merely direct the Court to the allegations made in the complaint and seek to force the Court to now accept them as true, despite the evidence attached to the complaint[4]. Therefore, this factor weighs heavily against default judgment.

### D. Remaining factors

Because the Court finds the complaint fails to state a claim and because it appears that there is significant likelihood that the material facts are in dispute, the Court will not analyze the remaining factors.

## IV. Dismissal of the action

Based upon the Court's review of the complaint and the attached exhibits, it appears the plaintiff has not stated a claim. In addition, she admits that she made allegations in the complaint despite having no reason to believe they were true. In particular, the plaintiff alleged that the defendant assessed a finance charge. (Doc. 1 at 10) However, she now admits she has no information to support that the defendant imposed a finance charge. (Doc. 12 at 7) Moreover, she now attempts to convince the Court that the plain reading of the exhibits attached to her complaint—upon which the complaint relies—do not mean what they say. For example, she claims that the interest charge—which is plainly described as "interest" (Compare Exhibit A to Exhibit B)—is a finance charge because that is the amount of interest that will accrue before she pays off the debt at the rate of $150 per month. (Doc. 12 at 7 – 8) Another example is that she insists that despite the exhibits make clear that the debt was "initially owed" to "Delano Ambulance," that the Court is required to accept her false allegation in her complaint that the debt was owed initially to the defendant. (Doc. 12)

Thus, the Court will recommend that the complaint be dismissed without leave to amend. It appears that if leave were granted, the Court could not be confident the plaintiff and her counsel would make truthful allegations.

///

///

---

[4] Once again, the Court is quite concerned by what appears to be a flagrant violation of Rule 11.

## VIII. Findings and Recommendations

Two of the three Eitel factors considered here weigh **against** granting default judgment, which is within the discretion of the Court. See Aldabe, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's application for default judgment (Doc. 27) be **DENIED**;
2. That the request for damages, fees and costs be **DENIED;**
3. That the complaint be **DISMISSED without leave to amend** and the action be closed.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **May 1, 2018**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE