# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAI MEDRANO,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GREAT MERCANTILE AGENCY, INC.,<br><br>　　　　Defendant. | Case No.: 1:17-cv-1392-LJO-JLT<br><br>**ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Docs. 8, 13) |

## I. INTRODUCTION

Plaintiff Sarai Medrano alleges that she owed a debt on a medical account. She contends Defendant Great Mercantile Agency, Inc. ("Defendant"), engaged in unlawful practices related to collecting this debt, and violated the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act, and the Truth in Lending Act ("TILA"). (*See generally* Doc. 1) After Defendant failed to respond to the complaint, Defendant's default was entered. (Doc. 6) Plaintiff thereafter filed a motion for default judgment, which was referred to the assigned Magistrate Judge for Findings and Recommendations ("F&Rs").

On May 1, 2018, the Magistrate Judge issued F&Rs recommending Plaintiff's motion be denied and the complaint be dismissed with prejudice. (Doc. 13.) On May 15, 2018, Plaintiff filed objections

1

to the F&Rs. Pursuant to 28 U.S.C. § 636(b)(1), the Court considers the matter de novo and adopts the Magistrate Judge's F&Rs in part.

**II.     DISCUSSION**

**A.     Service of the Complaint**

When a plaintiff requests default judgment, the court must first assess whether the defendant was properly served with notice of the action. *See Mason v. Genisco Tech. Corp*, 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process."). In this case, the defendant is a California corporation. Pursuant to Federal Rule of Civil Procedure 4(h)(1)(B), a domestic corporation may be served "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). In the alternative, Rule 4 permits service on a corporation to be effectuated in accordance with state law. Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

Section 416.10 of the California Code of Civil Procedure provides that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process [or] [t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10. California law also allows substituted service on a person to be served pursuant to Section 416.10 "by leaving a copy of the summons and the complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof." Cal. Code Civ. Proc. § 415.20(a). Before utilizing substitute service, however, a plaintiff must first make reasonable and diligent attempts at personal service. *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1390 (1992).

Here, Plaintiff included no declaration in support of her motion for default judgment that service of the complaint and summons was properly executed. The only document relating to service in the record is a returned proof of service, filed on November 27, 2017. (Doc. 4.) However, the executed service document indicates only that the complaint and summons was served on Crystal Neill on

2

November 15, 2017, by a registered process server. (Doc. 4, p. 2.) There is no information, however, where the document was served or Crystal Neill's relationship to defendant Grant Mercantile Agency, Inc. The California Secretary of State website indicates the agent for service of process for Defendant is Rick Slayton in Oakhurst, California.[1] Without any declaration of the process server stating where the complaint was served, Crystal Neill's relationship to the defendant, or whether personal service on Rick Slayton was attempted, there is no evidence service was properly effectuated. Failed service cannot support the entry of default judgment. *Mason*, 960 F.2d at 851. The motion for default judgment must be denied on that ground alone.

Turning to consideration of the *Eitel* factors below, the Court agrees with the Magistrate Judge's conclusion that Plaintiff's claims are insufficiently pled, which weighs strongly against entering default judgment.

**B.      Insufficiency of the Complaint Precludes Entry of Default Judgment**

Significantly, in the Ninth Circuit, it is well-settled that a default judgment may not be entered on a complaint that fails to state a claim. *See, e.g., Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) (affirming the district court's denial of default judgment where the plaintiff's claim lacked merit); *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 856 (9th Cir. 2007) (finding "the district court properly refused to grant default judgment" where the plaintiff's complaint did not set forth facts supporting the claims and instead offered only "legal conclusions" that were not admitted through default); *see also Reitz v. Adams*, No. 3:13-cv-02025-AC, 2015 WL 1346127, at *9 (D. Or. Mar. 23, 2015) ("because the court concluded that [the] First Amended Complaint fails to state a clam, there are no live claims for which the court may declare a default").

As set forth below, because Plaintiff has failed to state a cognizable claim, the Court adopts Magistrate Judge's recommendation to deny default judgment.

**1.      FDCPA Claims Are Not Viable and Are Dismissed With Prejudice**

Under the provisions of the FDCPA, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v.*

---

[1] Notably, Plaintiff mailed her motion for default judgment to Rick Slayton.

3

1 *Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). To establish a violation of the FDCPA, Plaintiff must show (1) she was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector" as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA. *Miranda v. Law Office of D. Scott Carruthers*, No. 1:10-cv-01487, 2011 WL 2037556 at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)). Plaintiff's claims under the FDCPA fail under the fourth element because she has not shown Defendant engaged in an act or omission prohibited by the FDCPA.

### a. Section 1692e claims

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute then sets out sixteen different types of conduct that violate this prohibition. Plaintiff alleges Defendant is liable for violating Section 1692e(5), which prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." In addition, Plaintiff alleges Defendant violated Section 1692e(10), which proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." To state a claim under Section 1692e(5), a court must determine: "(1) whether there was threatened legal action and, if so (2) whether such action could legally be taken or whether there was an intent to bring a court action in the absence of payment." *Newman v. Checkrite Cal.*, Inc., 912 F. Supp. 1354, 1379 (E.D. Cal. 1995) (superseded by statute on other grounds).

Plaintiff alleges that Defendant informed Plaintiff by letter that the company "reserved the right to refuse partial payments on this account without prior approval from Grant Mercantile Agency." (Doc. 1 at 9, ¶ 38) She contends that Defendant's statement that it may refuse partial payments is a threat to take an action that cannot legally be taken. (*Id.*, ¶ 40) Further, Plaintiff alleges that because Plaintiff's debt is accruing interest, Defendant's statement that it could refuse to accept partial payments is unfair because Plaintiff's debt would continue to increase without any opportunity to make payments that would decrease overall interest capitalization. (*Id.*, ¶ 43)

After reviewing these allegations, the Magistrate Judge directed Plaintiff to file a supplemental brief that identified "[s]pecific, on point legal authority that a debt collector's report to a debtor that it reserves the right to refuse partial payments constitutes a threat to take action that cannot be taken legally." (Doc. 11 at 1) In her supplemental filing, Plaintiff failed to identify any legal authority supporting the conclusion that the refusal to accept partial payments was a threat of action that could not legally be taken under Section 1692e(5) or a false representation under Section 1692e(10).[2] Plaintiff argued instead that the actual refusal to accept partial payments *should* be unlawful, but failed to identify any legal authority supporting the position that it was, in fact, a violation of the FDCPA. (*See* Doc. 13 at 4, citing Doc. 12 at 2-5 (emphasis in original).)

As the Magistrate Judge indicated, a refusal to accept partial payments is not an actionable violation under Section 1692e. In *Beeks v. ALS Lien Services*, No. 12-cv-2411-FMO (PJWx), 2014 WL 7785745 (C.D. Cal. Feb. 18, 2014), the plaintiff argued the defendant's refusal to accept a partial payment on homeowner association dues that were in collections was a violation of the FDCPA. She argued specifically that the homeowners association itself permitted partial payments, thus the defendant debt collector was required to accept a partial payment, and refusal to do so was a violation of the FDCPA. The plaintiff also argued Section 1692h required partial payments. *Id.* at *14. The court rejected the plaintiff's arguments, explaining that

> [t]he Fair Trade Commission's annual report acknowledges that "some conduct about which consumers complain does not violate the FDCPA. For example, a consumer may complain that a debt collector will not accept partial payments on the same installment terms that the original lender permitted when the account was current. Although a collector's demand for accelerated payment or larger installments may be frustrating to the consumer, such a demand generally does not violate the FDCPA."

*Beeks*, 2014 WL 7785745, at *14 (C.D. Cal. Feb. 18, 2014) (quoting Federal Trade Commission, Annual Report, 2011: Fair Debt Collection Practices 3 (2011), available at http:// ftc.gov/os/2011/03/110321fairdebtcollectreport.pdf). The Court agrees with the reasoning of *Beeks*, and Plaintiff has identified no other legal authority that a debt collector's refusal of partial payments violates the FDCPA. Moreover, Defendant's statement here was not a complete refusal to accept partial payments.

---

[2] Instead, Plaintiff focused her briefing only on the argument that Defendant's actions were unconscionable under Section 1692f. (*See* Doc. 12 at 2)

5

Rather, Defendant said only that it *reserved* the right to refusal partial payments *without prior approval*.

As it pertains to "false statements" under 1692e(10), because the refusal to accept partial payments without prior approval is not a legal action that cannot be taken, it cannot be considered a false statement. Because Plaintiff has not identified any threat to take legal action that cannot be taken and the refusal of partial payments does not violate the FDCPA, her claims for violations of Section 1692e(5) and 1692e(10) fail.[3] *See Beeks*, 2014 WL 7785745, at *13-14 (rejecting the plaintiff's argument that "defendant's refusal to accept partial payments violated the FDCPA's prohibitions against false and deceptive representations [under] § 1692e(10)"). Consequently, the Court adopts the findings of the Magistrate Judge that Plaintiff failed to state a claim under these sections of the FDCPA.

### b. Section 1692f Claim

In the third cause of action, Plaintiff alleges that Defendant is liable for a violation of 15 U.S.C. § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA does not define "unfair" or "unconscionable," but Section 1692f provides eight examples of improper conduct "without limiting the general application" of the statute. *See id.*

Here, Plaintiff relies on the same facts underpinning her Section 1692e claims. To state a cognizable claim under Section 1692f, Plaintiff must present factual allegations that plausibly describe a debt collection practice that was unfair or unconscionable. The allegation that Defendant reserved the right to refuse a partial payment without prior authority is not "unfair or unconscionable," and several courts have reached the same conclusion. *See, e.g.*, *Beeks*, 2014 WL 7785745, at *13-14 (rejecting the argument that the defendant violated Section 1692f where the plaintiff was informed "the only way [she] could cure her delinquency was to pay… in full"); *see also Hill v. Woods,* No. 1:16-cv-00916-JMS-DKL, 2017 WL 529601, at *7 (S.D. In. Feb. 9, 2017) (holding the plaintiff did not state a claim

---

[3] Notably, Plaintiff also failed to allege any facts supporting a conclusion that Defendant made "false, deceptive, or misleading statements" related to the partial payments. (*See* Doc. 1 at 12, ¶ 60) Instead, Plaintiff merely used key words in the relevant provision of Section 1692e. *See* 15 U.S.C. § 1692e(10) (prohibiting the use of "*false representation or deceptive* means to collect or attempt to collect any debt…") (emphasis added). Without *facts* to support this assertion, Plaintiff offers no more than a legal conclusion, which are not entitled to an assumption of truth. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (holding the Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations"); *see also DIRECTV, Inc. v. Huynh,* 503 F.3d 847, 854 (9th Cir. 2007) (facts that are not well-pleaded and conclusions of law are not deemed admitted against a defendant).

for a violation of Section 1692f where the defendant "set[] a payment website to not allow partial payments"). Moreover, even assuming an outright refusal to accept partial payments could be an unfair or unconscionable debt collection practice under certain circumstances, the complaint and the exhibits attached thereto are clear that Defendant did not, in fact, refuse to accept partial payments, as it offered a partial payment plan of $150 per month. And, the single statement that Defendant reserved the right to refuse partial payments without prior approval is not a threat to refuse *any* partial payments. The Court adopts the finding of the Magistrate Judge that Plaintiff did not state a claim for a violation of Section 1692f.

### 2. California's Rosenthal Act Claim is Not Viable

California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F.Supp.2d 1051, 1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1). As the Ninth Circuit observed, the Rosenthal Act is the "state version of the FDCPA." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). Thus, the Rosenthal Act "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs*, 681 F.3d at 1100 (citing Cal. Civ. Code § 1788.17).

Plaintiff alleges Defendant violated the Rosenthal Act through the purported violations of Sections 1692e(5) and (10). As discussed above, Plaintiff fails to state a claim under the FDCPA, and thus her claim under the Rosenthal Act also fails. *See Freligh v. Roc Asset Sols., LLC*, No. 16-cv-00653, 2016 WL 3748723, at *5 (N.D. Cal. June 8, 2016) ("whether an act 'violates the Rosenthal Act turns on whether it violates the FDCPA'") (quoting *Riggs*, 681 F.3d at 1100).

### 3. TILA Claim is Not Viable

TILA was enacted "to strengthen the 'informed use of credit' by requiring meaningful disclosure of credit terms to consumers." *McDonald v. Checks-N-Advance, Inc.*, 539 F.3d 1186, 1189 (9th Cir. 2008) (quoting 15 U.S.C. § 1601(a)). Section 1638(a) identifies disclosures creditors must make in transactions other than an open end credit plan. *Id.* For example, a creditor must disclose an annual interest rate and any finance charge. 15 U.S.C. § 1638(a)(3). Where a creditor has failed to comply with any requirement of the TILA, a consumer may "obtain actual or statutory damages." *McDonald*,

592 F.3d at 1190 (citing 15 U.S.C. § 1640(a)).

Plaintiff alleges that by entering into a payment plan, Defendant extended Plaintiff "credit" as defined by 15 U.S.C. § 1620(f). (Doc. 1 at 14, ¶ 68) She also asserts that by entering into a payment plan, Defendant entered into a "consumer credit transaction" with Plaintiff which required Defendant to provide Plaintiff a Truth in Lending disclosure statement. (*Id.*, ¶ 69 (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 409 (3d Cir. 2000)).) Plaintiff contends Defendant violated TILA by failing to provide Plaintiff a Truth in Lending Disclosure statement and by failing to disclose the amount financed, the total payments, and the finance charge. (Doc. 1 at 14-15, ¶¶ 71-74.)

The Magistrate Judge concluded that Defendant did not qualify as a creditor under TILA because the payment plan offered to Plaintiff does not clearly show a finance charge was assessed, other than the interest owing on the debt before collection activities occurred. The Magistrate Judge also found that, even assuming there was a finance charge or additional interest accruing over the life of the payment plan, Defendant still did not qualify as a creditor because the debt was not initially payable to Defendant. Rather, the debt was originally payable to Delano Ambulance.

Plaintiff objects to the Magistrate Judge's finding that Defendant does not qualify as a creditor under the TILA. Relying on *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 411 (3d Cir. 2000), Plaintiff argues that because Defendant offered her a payment plan spanning more than four installments, regardless whether it was subject to a finance charge (which Plaintiff maintains the collection documents plausibly indicate), Defendant extended consumer credit. Second, Plaintiff argues, the payment plan Defendant offered was a "new" debt initially payable to Defendant, not Delano Ambulance.

In relevant part, TILA provides:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. §1602(g) (emphasis added).

In *Pollice*, government entities sold claims for unpaid property taxes and water and sewer bills

8

to National Tax Funding ("NTF"), which was "in the business of purchasing such delinquent claims from municipalities in several states." 225 F.3d at 385. However, the government entities "retained the right to service the claims," and entered into a servicing agreement with Capital Asset Research Corporation ("Capital"). *Id.* at 385-86. Under the servicing agreements, Capital was directed "to collect the claims for the benefit of NFT," and was "required . . . to offer homeowners 'payment plans' [with] particular terms." *Id.* at 386. The plaintiffs alleged that NFT and Capital were liable for violations of the FDCPA and TILA. *See id.* at 387. On summary judgment, the district court determined Capital was not a creditor under TILA, but NFT was a creditor. The district court's determination as to Capital was not challenged, but NFT appealed arguing, in part, that NFT could not qualify as a "creditor" under TILA. *Id.* at 412, n. 38.

On appeal, NFT argued the payment plans offered to consumers to pay their water, sewer, and tax obligations did not create any "debt" arising from the payment plan itself because it did not involve any new fees or charges in addition to what was originally owed. Rather, NFT maintained, the only debt involved were the original obligations. Moreover, NFT argued those original obligations were initially payable to the governmental entities, not NTF. *Id*. at 412.

NFT's arguments were rejected, and the appellate court upheld the district court's determination that NFT qualified as a creditor under TILA. The appellate court reasoned the payment plans constituted a consumer credit transaction because NTF was the first to offer a deferment through a payment plan, thus extending credit that had not been offered originally. The court also concluded that "credit" included any deferment of debt, regardless of any additional charges or fees associated with that deferment. On the face of the payment plan enrollment forms, consumers were to make payments to NTF, through its custodian (*i.e.*, Capital), and thus payment-plan payments were *initially* owed to NTF. The court summarized its reasoning as follows:

> [T]here are really two types of "debt" at issue here. The first is the original "debt" owed by a homeowner to one of the government entities and later assigned to NTF. It is this "debt" as to which NTF has granted the "right . . . to defer payment" within the meaning of Section 1602(e), and in turn the granting of this right gives rise to a "consumer credit transaction" within the meaning of section 1602(h). The second "debt" is the new "debt" which "aris[es] from the consumer credit transaction [the payment plan]" within the meaning of section 1602(f). It is this [second] "debt" which is "initially payable" to NTF.

9

*Id.* at 412.

The decision in *Pollice* provides legal authority to support a theory of recovery whereby the payment plan offered by Defendant could be considered a consumer credit transaction that was initially owed to Defendant. However, as the Magistrate Judge noted, the complaint alleges "Defendant regularly collects or attempts to collect, directly or indirectly, debts *owed or due, or asserted to be owed or due, another.*" (Cmplt., ¶ 33 (emphasis added).) Based on this allegation, it appears Defendant functioned as a servicer of debt still owed to Delano Ambulance, similar to the debt servicer, Capital, in *Pollice* who did not qualify as a creditor under TILA. Nevertheless, the payment plan document attached to the complaint (Doc. 1-2) shows the payment plan was ostensibly offered by Defendant with no indication Delano Ambulance was involved to any extent, and it was Defendant to whom the payments were to be made. As a result, the complaint is not clear whether Defendant only services a debt for another on terms offered by or available through the initial creditor (Delano Ambulance), or whether Defendant was the *first* to offer a payment plan such that it constituted a consumer credit transaction and Defendant became a "creditor" for purposes of TILA. For this reason, the Court agrees that a TILA claim has not been sufficiently alleged under the theory articulated by the Third Circuit in *Pollice*. It is possible, however, that additional allegations about the nature of the payment plan Defendant offered and Defendant's role in offering the payment plan could cure the defects.

### IV. Amendment of the Complaint

With regard to Plaintiff's TILA claim, it is possible the complaint may be properly and sufficiently amended to indicate that Defendant is more than a mere servicer or collector of a debt owed to another. There is legal authority to support a theory that any new payment plan first offered by Defendant could be considered a consumer credit transaction on debt that would then be considered initially payable to Defendant, similar to NFT in *Pollice*.

With regard to Plaintiff's FDCPA claims, the facts do not indicate a viable claim as the "reservation" of a right to accept partial payments without prior approval is not a legal act that could not be taken (or was never intended to be taken), nor does it represent a false or misleading, unfair, or unconscionable debt collection practice (particularly because Plaintiff was offered a payment plan).

10

1 | These claims are not viable and are dismissed with prejudice. *See Lopez v. Smith*, 203 F.3d 1122,
2 | 1127-28 (9th Cir. 2000).

Plaintiff may amend her complaint with regard only to her TILA claim within 14 days from the date of this order. If Plaintiff does not file an amended complaint before the deadline, the complaint will be dismissed with prejudice for failure to state a claim.

### V. Conclusion and Order

For the reasons discussed above **IT IS HEREBY ORDERED** that:

1. The Court adopts the Magistrate Judge's Findings and Recommendations in part;
2. Plaintiff's motion for default judgment (Doc. 8) is **DENIED**;
3. Plaintiff's FDCPA claims are **DISMISSED with prejudice and without leave to amend**;
4. Plaintiff's TILA claim is **DISMISSED without prejudice and with leave to amend**;
5. Any amended complaint must be filed within 14 days from the date of this order;
6. If Plaintiff elects not to file an amended complaint within 14 days, the Court will dismiss this action with prejudice for failure to state a claim; and
7. If, upon review of the record and her files, Plaintiff concludes service of the complaint was not properly effectuated (currently the record reflects the original complaint was not properly served), then Plaintiff must effectuate service of the summons and any amended complaint as soon as is practicable upon filing an amended complaint.

IT IS SO ORDERED.

Dated: **June 20, 2018**         **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE

11